PER CURIAM.
Steven P. Hurst sued the Gadsden Country Club (“GCC”) in the Etowah Circuit Court, alleging that his employment had been terminated in retaliation for his seeking worker’s compensation benefits after suffering an on-the-job injury, in violation of § 25-5-11.1, Ala.Code 1975.[1] In its answer, GCC denied that Hurst had been terminated for filing a worker’s compensation claim and stated that legitimate grounds existed for Hurst’s termination, unrelated to any worker’s compensation claim. In an answer to an interrogatory, GCC stated that Hurst was fired for leaving work after the accident that resulted in his on-the-job injury without first seeking medical attention, in violation of both his supervisor’s instructions and GCC policy. Hurst thereafter moved the trial court to strike that “affirmative defense,” arguing that it had been rejected in an administrative hearing conducted by the Department of Industrial Relations (“DIR”) on Hurst’s claim for unemployment benefits. The trial court granted Hurst’s motion, and GCC now petitions this Court for mandamus relief, arguing that the trial court exceeded its discretion in striking that defense because, it argues, DIR did not, in fact, reject that defense. We deny the petition.
I.
In its decision on Hurst’s unemployment-compensation claim, DIR described the relevant facts as follows:
“[Hurst] worked for [GCC] from 1999, until June 27, 2007. [Hurst] was injured as he fell going up stairs. The supervisor determined that the fall was serious enough to seek medical treatment. The company policy provides for medical treatment in case of an accident at the discretion of the supervisor. [Hurst] left the work site at 1:00 p.m., at the end of his shift. [Hurst] was in his car and [the] supervisor stopped him and told him that he needed to complete necessary paperwork related to his fall. [Hurst] went in to complete the paperwork but the supervisor could not find the proper forms. [Hurst] told him that while he was looking for the forms he needed to check on his father and he would return in approximately 20 minutes. [Hurst] returned to the work site approximately 40 minutes later and was discharged in accordance with company policy for refusing to get medical treatment and leaving the work site without permission. [Hurst] was aware of the policy as he received a copy at hire and the policy was updated during safety meetings. [Hurst] did not seek medical treatment because he did not feel that he was injured. [Hurst] had surgery already scheduled for July 11, 2007, on the shoulder that he fell on so he did not go to the doctor. [Hurst] denied the allegation that he refused to get medical treatment and that he left the work site without permission.”
DIR denied Hurst’s unemployment-compensation claim. On August 6, 2007, Hurst filed the underlying retaliatory-discharge action against GCC. On December 6, 2007, Hurst amended his complaint to add DIR as a defendant in order to appeal *832 the preliminary decision it had made denying his claim for unemployment benefits. DIR filed an answer stating that Hurst was “not physically able to work” and that he was “disqualified for receipt of unemployment compensation” pursuant to § 25-4-78(3), Ala.Code 1975, the subsection dealing with discharge for misconduct.
On March 17, 2008, Hurst filed two motions — a motion to dismiss DIR as a defendant because it had begun paying Hurst unemployment benefits and a motion to strike GCC’s “affirmative defense” that his employment had been terminated because he left work after his accident without first seeking medical attention. Hurst argued that GCC had offered this same reason for terminating his employment during the DIR proceedings and that it had been rejected by the DIR administrative officer; therefore, he argued, because GCC had not appealed the DIR decision, it could not now seek to relitigate that issue. See, e.g., Wal-Mart Stores, Inc. v. Smitherman, 743 So.2d 442, 448 (Ala.1999) (“ ‘To allow a plaintiff to raise the same issues in a subsequent lawsuit after having elected not to appeal from the administrative ruling would frustrate efforts to provide an orderly administration of justice and could encourage one to relitigate issues rather than have those issues finally resolved.’ ” (quoting Ex parte Smith, 683 So.2d 431, 436 (Ala.1996))).
GCC opposed Hurst’s motion to strike, arguing that he was misinterpreting the DIR decision and that the DIR decision, in fact, supported GCC’s position. The trial court, however, agreed with Hurst and granted his motion to strike on May 2, 2008.[2] On June 13, 2008, GCC petitioned this Court for mandamus relief, asking us to direct the trial court to vacate its order prohibiting GCC from asserting as an affirmative defense that Hurst’s employment had been terminated as a result of his leaving work after an accident without first seeking medical attention. We deny the petition.
II.
In Ex parte Buffalo Rock Co., 941 So.2d 273, 277 (Ala.2006), this Court stated:
“ ‘Mandamus is an extraordinary remedy and will be granted only where there is “(1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.” ’
“Ex parte Ocwen Fed. Bank, FSB, 872 So.2d 810, 813 (Ala.2003) (quoting Ex parte Alfab, Inc., 586 So.2d 889, 891 (Ala.1991)). A trial court’s disallowance of a party’s affirmative defense is reviewable by a petition for a writ of mandamus. See Ex parte Neely Truck Line, Inc., 588 So.2d 484 (Ala.Civ.App.1991).”
*833 In the present case, the parties dispute only whether GCC has a clear legal right to the relief it seeks and whether it has another adequate remedy.
III.
GCC argues that it has a clear legal right to the issuance of a writ of mandamus because the trial court’s disal-lowance of its defense that Hurst was fired for reasons other than Hurst’s filing a claim for worker’s compensation benefits was a disallowance of an affirmative defense. Hurst argues that the writ of mandamus GCC seeks should not be issued because, he argues, GCC has an adequate remedy by way of appeal. Hurst supports this argument by citing Ex parte Sysco Food Seivices of Jackson, LLC, 901 So.2d 671 (Ala.2004), another retaliatory-discharge case, in which this Court considered an employer’s petition for mandamus relief after the trial court had granted a motion in limine filed by a discharged employee barring the employer from introducing any evidence that the employee had been fired for committing dishonest or criminal acts in connection with his work; DIR had previously concluded during administrative hearings on the employee’s claim for unemployment benefits that the employee had not acted dishonestly or criminally. This Court declined to consider the merits of the petition, noting instead that “review of an order granting or denying a motion in limine is by appeal.” 901 So.2d at 674. We further noted that the employer had suggested other reasons for terminating the employee’s employment and that it could still present evidence supporting those other reasons at trial. If, after that trial, the employer still desired to do so, it could then “appeal the propriety of the trial court’s order granting the motion in limine.” 901 So.2d at 676.
GCC argues that Ex parte Sysco is not directly relevant here because it concerned the proper method for seeking review of an order granting a motion in limine, and, in the present case, GCC seeks review of an order striking an affirmative defense. This Court in Ex parte Buffalo Rock, GCC notes, specifically stated that “[a] trial court’s disallowance of a party’s affirmative defense is reviewable by a petition for a writ of mandamus.” 941 So.2d at 277. GCC is correct.
A petition for a writ of mandamus is a proper means to review the order of a trial court disallowing a party’s affirmative defense. Ex parte Buffalo Rock. The question we must now answer is whether GCC’s defense to Hurst’s claim that he was fired solely for seeking worker’s compensation benefits was an affirmative defense. In its answer, GCC denied that Hurst was fired for seeking worker’s compensation benefits and stated that, instead, he was fired for legitimate grounds unrelated to his claim for worker’s compensation benefits. The issue is whether this assertion was an affirmative defense so that this Court can review the trial court’s disallowance of the defense on a petition for a writ of mandamus.
Hurst characterizes GCC’s denial that Hurst was fired in retaliation for seeking worker’s compensation benefits as an affirmative defense. This Court has defined an affirmative defense as “ ‘[a] defendant’s assertion of facts and arguments that, if true, will defeat the plaintiffs or prosecution’s claim, even if all the allegations in the complaint are true.’ ” Lloyd Noland Found., Inc. v. HealthSouth, Inc., 979 So.2d 784, 791 (Ala.2007) (quoting Black’s Law Dictionary 451 (8th ed.2004)). “An affirmative defense is defined as ‘new matter which, assuming the complaint to be true, constitutes a defense to it.’” Bechtel v. Crown Cent. Petroleum Corp., 451 So.2d 793, 795 (Ala.1984) (quoting *834 Black’s Law Dictionary (rev. 5th ed.1979)). “A defendant’s outright denial of the plaintiffs allegations without additional facts” is often referred to as a “negative defense.” Black’s 452 (8th ed.2004). In Ex parte Atmore Community Hospital, 719 So.2d 1190 (Ala.1998), this Court noted the difference between an “affirmative” defense and a “negative” defense as follows: An affirmative defense is distinguishable from a negative defense in that an affirmative defense raises new matters that, assuming the allegations in the complaint to be true, constitute a defense to the action and have the effect of defeating the plaintiffs claims on the merits while a negative defense simply seeks to refute an essential allegation of the plaintiffs complaint. 719 So.2d at 1193 n. 1.
To succeed on a retaliatory-discharge claim under § 25-5-11.1, Ala.Code 1975, a plaintiff must show: “1) an employment relationship; 2) an on-the-job injury; 3) knowledge on the part of the employer of the on-the-job injury; and 4) subsequent termination of employment based solely upon the employee’s on-the-job injury and the filing of a workers’ compensation claim.” Alabama Power Co. v. Aldridge, 854 So.2d 554, 563 (Ala.2002). If GCC proves that Hurst was fired for legitimate grounds unrelated to his filing for worker’s compensation benefits, Hurst’s retaliatory-discharge claim will be defeated. However, that does not mean that GCC’s defense that it had cause to fire Hurst was an “affirmative defense.” The defense of “fired for cause” does not raise a new matter in a retaliatory-discharge claim. In contrast to a negative defense, an affirmative defense does not rebut any factual propositions asserted in the plaintiffs complaint but opens the way for the defendant to present evidence establishing an independent reason why the plaintiff may not recover. Because GCC’s defense was not an affirmative defense, GCC does not have a clear legal right to the issuance of a writ of mandamus, and this Court must deny its petition for the writ.
PETITION DENIED.
LYONS, WOODALL, SMITH, and PARKER, JJ., concur.
BOLIN, J., concurs specially.
SEE, J., concurs in part and concurs in the result.
STUART and MURDOCK, JJ., dissent.

. Section 25-5-11.1 provides, in relevant part, that "[n]o employee shall be terminated by an employer solely because the employee has instituted or maintained any action against the employer to recover workers’ compensation benefits ...."

. The order entered by the trial court granting Hurst’s motion to strike stated that it was striking GCC’s "affirmative defense” that Hurst "voluntarily quit." Hurst subsequently filed a motion to clarify, arguing that the trial court had, as a result of a scrivener's error in his motion to strike — which error had been specifically acknowledged at the hearing on the motion — inadvertently stricken an affirmative defense that GCC had not even made (i.e., that Hurst had voluntarily quit his employment with GCC) instead of the intended defense — that Hurst's employment had been terminated because he violated his supervisor’s instructions and GCC policy by leaving work after an accident without first receiving medical attention. On May 7, 2008, the trial court granted the motion to clarify that it was striking GCC’s defense that Hurst was "fired for leaving work without permission and refusing medical treatment.”