MOORE, Judge.
Jack Grieser ("the employee") appeals from a judgment entered by the Crenshaw Circuit Court ("the trial court") to the extent that it awarded him permanent-partial-disability benefits under the Alabama Workers' Compensation Act ("the Act"), § 25-5-1 et seq., Ala. Code 1975, based, he says, on the wrong average weekly wage; declined to award him benefits based on his alleged vocational impairment; and denied his request to hold Advanced Disposal Services Alabama, LLC ("the employer"), in contempt of court. We affirm the judgment in part and reverse it in part.
Facts and Procedural History
On February 7, 2011, the employee filed a complaint in the trial court, alleging that he had suffered an on-the-job injury and seeking workers' compensation benefits from the employer. On March 8, 2011, the employer answered the complaint. The employee amended his complaint on March 16, 2011, to correct an error in the employer's name. The employer answered the amended complaint on March 21, 2011.
On November 21, 2011, the employer filed a motion requesting a determination regarding whether it was obligated to pay for pain-management treatment for the employee. That same day, the employee amended his complaint to add a claim alleging retaliatory discharge. The employer filed an answer to the second amended complaint on November 30, 2011. On March 14, 2012, the trial court entered an order requiring the employer to provide pain-management treatment for the employee.
*667 On June 9, 2014, the employer filed a motion for a partial summary judgment on the retaliatory-discharge claim. The employee filed a response to the partial-summary-judgment motion on October 20, 2014. On December 16, 2014, the trial court entered a partial summary judgment in favor of the employer on the retaliatory-discharge claim.
On March 9, 2015, the employer filed a motion in limine requesting "an Order precluding [the employee], [the employee's] witnesses, and [the employee's] counsel from offering any evidence or giving any testimony concerning, or making any argument about or [in] reference to, or asking any questions or soliciting testimony about, any alleged vocational impairment or vocational disability of the [employee]." The employer argued that Ala. Code 1975, § 25-5-57(a)(3) i. ("the return-to-work statute"), a part of the Act, precluded the employee from offering evidence of vocational disability. Specifically, the employer argued that the employee had "return[ed] to work at a wage equal to or greater than the [employee's] pre-injury wage," § 25-5-57(a)(3) i., and that, although the employee's employment had subsequently been terminated, it had been terminated "for actual or threatened misconduct committed in connection with his ... work after previous warning to the employee," § 25-5-57(a)(3) i.(iv). In the alternative, the employer moved for a partial summary judgment on that issue.
On March 15, 2015, the employee filed an objection to and a motion to strike the employer's motion in limine or, in the alternative, for a partial summary judgment. The employee argued, among other things, that the entirety of the return-to-work statute, as well as the portion of the statute regarding whether the employee's employment had been terminated "for actual or threatened misconduct committed in connection with his ... work after previous warning to the employee," were affirmative defenses. He asserted that, because the employer had not raised those defenses in its answer, those defenses were waived. On March 19, 2015, the trial court held a trial at which it heard, among other evidence, testimony regarding the employee's vocational disability.
On January 22, 2016, the employee filed a motion requesting that the trial court hold the employer in contempt for its failure to pay for the employee's pain-management treatment. The employee specifically argued that the employer had failed to pay for an injection of medication that the employee had received in November 2015 to treat the employee's pain and that the employer had requested that the employee be weaned off of oral pain medications that his physician had deemed medically necessary.
On January 26, 2016, the trial court entered an order, stating, in pertinent part:
"2. [On January 21, 2010], [the employee] suffered an accident arising out of and in the course of his employment. The accident occurred when [the employee] stepped down from a flatbed truck onto a concrete loading ramp while performing his job duties for [the employer].
"....
"4. Ultimately, [the employee's] back injury was treated by physicians at Neurosurgery & Spine Associates of Central Alabama. [The employee] also received and continues to receive pain-management treatment from the Pain Center of Montgomery. All of this treatment has been authorized and approved by [the employer] pursuant to the Act. There was no proof submitted at trial that [the employee] had incurred medical treatment or related expenses in connection *668 with his injury that had not been paid for by [the employer] and the Court finds that no such bills and expenses are presently due, owing or known to either party.
"5. Neurosurgery & Spine Associates of Central Alabama determined that [the employee's] back injury resulting from the accident was due to 'multifactorial issues; degenerative disc disease probably exacerbated by injury.' The Court accepts this conclusion in making its determinations in this case. [The employee] is not a candidate for surgery for his back condition according to the evidence.
"6. [The employee] reached maximum medical improvement for his injury on July 23, 2010, and was assigned a 5% medical impairment to his body as a whole.
"7. At the time of his injury, [the employee's] average weekly wage with [the employer] was $491.66.
"8. Since [the employee's] injury is not scheduled under the provisions of the Act, [the employee] may receive permanent-partial-disability benefits for 300 weeks, less the number of weeks [the employee] was paid temporary-total-disability benefits. Ala. Code [1975,] § 25-5-57(a)(3) g. There was no proof offered at trial whether [the employee] received temporary-total-disability benefits or was due to receive temporary-total-disability benefits. Accordingly, the Court does not award such benefits and, therefore, [the employee] is due to receive 300 weeks of permanent-partial-disability benefits.
"9. [The employee] was returned to employment by [the employer] following his injury earning wages at least equal to those he had been earning at the time of the accident. He continued his employment with [the employer] following the date he reached maximum medical improvement, again earning wages at least equal to those he had been earning at the time of his on-the-job injury.
"10. [The employee] claims that the Court should determine his disability and, in turn, calculate the benefits that are due him under the Act based upon vocational impairment instead of medical impairment. He argues that, since his back injury is unscheduled and he lost his employment with [the employer] within 300 weeks from the date of his injury, the Court may award benefits based upon vocational impairment under Ala. Code [1975,] § 25-5-57(a)(3) i., the 'Return to Work' statute. [The employer] argues that [the employee's] disability may not be based on vocational impairment under the provisions of the Return-to-Work statute because it has shown, by clear and convincing evidence, that his loss of employment was due to actual or threatened misconduct in connection with his work after previous warning.
"11. The evidence demonstrated that [the employer] terminated [the employee's] employment in January 2011 after he had been involved in a dispute with a co-employee.... [The co-employee] provided [the employer] with a statement of what she contended occurred between her and [the employee] that led to [the employee's] termination from employment with [the employer]. That statement reflected that [the employee] acted toward [the co-employee] in a way that was racially and sexually harassing.
"12. Although he denied some of the conduct [the co-employee] alleged against him, [the employee] admitted to a dispute with [the co-employee] and that, had he acted in the manner alleged by [the co-employee], the employee would have been in violation of [the employer's] anti-harassment policies, that *669 he was aware of those policies at the time of the acts [the co-employee] alleged against him, and that he had been warned that, under those policies, he could be terminated from employment for acts of racial or sexual harassment.
"13. [The co-employee's] statement to [the employer] was admitted into evidence, as was her deposition in this matter. In her deposition, and while verifying her statement, [the co-employee] attempted to explain away that she was racially and sexually harassed by [the employee]. The Court finds this attempt by [the co-employee], whose employment had been terminated by [the employer] prior to her deposition for reasons unrelated to her dispute with [the employee], unpersuasive. The Court finds that [the employer] has proved by clear and convincing evidence that [the employee's] employment with [the employer] was terminated because [the employee] had committed an act of misconduct in connection with his employment after being warned by [the employer] that such conduct could result in his termination from employment. Accordingly, under Ala. Code [1975,] § 25-5-57(a)(3) i.(iv), [the employee] may not recover for vocational impairment and the Court declines to award him benefits upon any claimed vocational disability.
"14. [The employee] also contends that the Court should not consider [the employer's] argument that the Return-to-Work statute prevents the Court from awarding benefits based upon vocational disability because, he claims, [the employer] ... did not assert the Return-to-Work statute as an affirmative defense.... The Court denies those requests."
On February 26, 2016, the employer filed a response to the employee's motion for contempt. On March 7, 2016, the employee filed a notice of appeal. On June 7, 2016, this court dismissed the appeal as having been taken from a nonfinal judgment. See Grieser v. Advanced Disposal Servs. Alabama, LLC, 228 So. 3d 447 (Ala. Civ. App. 2016) (table). This court issued its certificate of judgment on June 27, 2016.
On June 28, 2016, the employee filed a motion with the trial court, requesting an evidentiary hearing on his motion for contempt. After a hearing, the trial court entered an order on January 23, 2017, denying the employee's motion for contempt. On January 30, 2017, the employee filed his notice of appeal.
Discussion
I. Return-to-Work Statute
On appeal, the employee argues that the trial court erred by applying the return-to-work statute to deny his claim for permanent-partial-disability benefits based on his alleged vocational disability.
Section 25-5-57(a)(3) i., provides, in pertinent part:
"If, on or after the date of maximum medical improvement, except for scheduled injuries as provided in Section 25-5-57(a)(3), [Ala. Code 1975,] an injured worker returns to work at a wage equal to or greater than the worker's pre-injury wage, the worker's permanent partial disability rating shall be equal to his or her physical impairment and the court shall not consider any evidence of vocational disability. Notwithstanding the foregoing, if the employee has lost his or her employment under circumstances other than any of the following within a period of time not to exceed 300 weeks from the date of injury, an employee may petition a court within two years thereof for reconsideration of his *670 or her permanent partial disability rating:
"....
"(ii) The loss of employment is voluntary, without good cause connected with such work.
"....
"(iv) The loss of employment is for actual or threatened misconduct committed in connection with his or her work after previous warning to the employee.
"....
"The burden of proof is on the employer to prove, by clear and convincing evidence, that an employee's loss of employment was due to one of the causes (i) through (v) above. ..."
We initially point out that the return-to-work statute ordinarily does not apply when an employee has been terminated from his or her employment before receiving an award of workers' compensation benefits. In Pemco Aeroplex, Inc. v. Moore, 775 So.2d 215, 218 (Ala. Civ. App. 1999), overruled on other grounds by Grace v. Standard Furniture Manufacturing Co., 54 So.3d 909 (Ala. Civ. App. 2010), after a worker had suffered an on-the-job injury, he returned to work at a job with Pemco, within his restrictions, earning the same salary he had earned before his injury. 775 So.2d at 217. However, according to the worker, Pemco had required him to perform duties outside his restrictions, and, ultimately, the worker had resigned his employment after Pemco had disallowed him from taking a leave of absence because of his inability to perform those duties. Id. The worker filed a complaint seeking workers' compensation benefits, and the Jefferson Circuit Court considered evidence of the worker's vocational disability and awarded him benefits based on a 35% permanent partial disability.
Pemco appealed, arguing "that the worker [had] left his employment without good cause, and, therefore, the return-to-work provision should apply to preclude the evidence of the worker's vocational disability." 775 So.2d at 217. This court, however, recognized that, "[b]y its terms[, the second sentence of the return-to-work statute] applies only in a case where the worker has already been assigned a disability rating and is petitioning the trial court to reopen the worker's case to reconsider that rating based on the loss of his or her job." Id. at 218. However, because the worker in Pemco had not filed a petition requesting to reopen the case but, instead, had filed a complaint requesting workers' compensation benefits in the first instance, this court held that Pemco's argument was misplaced and that the trial court had properly considered evidence of the worker's vocational disability. 775 So.2d at 218.
Similarly, in the present case, the employee had returned to work, after reaching maximum medical improvement from his on-the-job injury, earning wages equal to or greater than his preinjury wages. However, by the time of the trial, the employee was no longer employed earning those wages. As in Pemco, the employer in this case argues that the employee should not receive permanent-partial-disability benefits based on his alleged vocational disability because, it says, the employee's employment had been terminated for one of the reasons set forth in the return-to-work statute, namely, "for actual or threatened misconduct committed in connection with his ... work after previous warning to the employee." However, because the employee is seeking an initial disability determination, not petitioning for reconsideration of a previous disability determination, the return-to-work statute does not apply to his claim.
*671 Nevertheless, in the proceedings below, the employee did not argue that the return-to-work statute generally did not apply to his claim. Instead, the employee specifically argued only that the employer had waived the "affirmative defense" established in the return-to-work statute. The parties litigated that particular point, and the trial court ruled against the employee. On appeal, this court is limited to considering the case in the context and under the theories upon which it was tried in the proceedings below. See Vulcraft, Inc. v. Wilbanks, 54 Ala.App. 393, 395, 309 So.2d 105, 106 (Civ. App. 1975). Therefore, we address the questions raised in this appeal even though the return-to-work statute ordinarily would not apply in circumstances such as those present in this case.
The question whether the provisions of the return-to-work statute upon which the employer relied- § 25-5-57(a)(3) i. and § 25-5-57(a)(3) i.(iv)-are affirmative defenses that can be waived is a purely legal issue, so we apply a de novo standard of review. See, e.g., Ex parte Morris, 999 So.2d 932, 936 (Ala. 2008).
"This Court has defined an affirmative defense as ' ''[a] defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's ... claim, even if all the allegations in the complaint are true.'' ' Lloyd Noland Found., Inc. v. HealthSouth, Inc., 979 So.2d 784, 791 (Ala. 2007) (quoting Black's Law Dictionary 451 (8th ed. 2004)). 'An affirmative defense is defined as "new matter which, assuming the complaint to be true, constitutes a defense to it.'' ' Bechtel v. Crown Cent. Petroleum Corp., 451 So.2d 793, 795 (Ala. 1984) (quoting Black's Law Dictionary (rev. 5th ed. 1979)). 'A defendant's outright denial of the plaintiff's allegations without additional facts' is often referred to as a 'negative defense.' Black's 452 (8th ed. 2004). In Ex parte Atmore Community Hospital, 719 So.2d 1190 (Ala. 1998), this Court noted the difference between an 'affirmative' defense and a 'negative' defense as follows: An affirmative defense is distinguishable from a negative defense in that an affirmative defense raises new matters that, assuming the allegations in the complaint to be true, constitute a defense to the action and have the effect of defeating the plaintiff's claims on the merits while a negative defense simply seeks to refute an essential allegation of the plaintiff's complaint. 719 So.2d at 1193 n.1."
Ex parte Gadsden Country Club, 14 So.3d 830, 833-34 (Ala. 2009).
The first sentence of the return-to-work statute makes it clear that an injured worker, who at the time of an initial disability determination has returned to work earning the same or greater wages than he or she was earning before the injury, may receive permanent-partial-disability benefits based only on physical impairment and that a trial court may not consider evidence of the worker's vocational disability. § 25-5-57(a)(3) i. That sentence does not create a means of defeating or reducing a worker's claim for compensation but, instead, sets forth the method by which a trial court must compute the worker's compensation in that situation. Therefore, we conclude that the return-to-work statute as a whole is not an affirmative defense.
The employee also argues that the following provision of the return-to-work statute constitutes an affirmative defense:
"Notwithstanding the foregoing, if the employee has lost his or her employment under circumstances other than any of the following within a period of time not to exceed 300 weeks from the *672 date of injury, an employee may petition a court within two years thereof for reconsideration of his or her permanent partial disability rating:
"....
"(iv) The loss of employment is for actual or threatened misconduct committed in connection with his or her work after previous warning to the employee."
§ 25-5-57(a)(3) i. That provision confers upon an injured worker who loses his or her employment "within ... 300 weeks from the date of injury" the right to "petition a court ... for reconsideration of his or her permanent partial disability rating." However, even if a worker proves that he or she lost his or employment within the requisite 300-week period, an employer can defeat the worker's right to "petition ... for reconsideration of his or her permanent partial disability rating" if it proves by clear and convincing evidence that one of five criteria has been met. § 25-5-57(a)(3) i.(i) through (v), Ala. Code 1975. Because, in the present case, the employer's assertion that the employee's "loss of employment [was] for actual or threatened misconduct committed in connection with his ... work after previous warning to the employee," § 25-5-57(a)(3) i.(iv), " ' "will defeat the [employee's] ... claim, even if all the allegations in the complaint are true," ' " Gadsden Country Club, 14 So.3d at 833, we conclude that § 25-5-57(a)(3) i.(i) through (v) create five separate affirmative defenses that are available to an employer in an action for reconsideration of an injured worker's permanent-partial-disability rating.
" ' "[An affirmative defense] is required to be specially pleaded under Rule 8(c)[, Ala. R. Civ. P.]. See Nash v. Vann, 390 So.2d 301, 303 (Ala. Civ. App. 1980). Under the Federal Rules of Civil Procedure, after which our rules are modeled, the consequences of a party's failure to plead an affirmative defense have been explained as follows:
" ' " 'If a n affirmative defense is not pleaded it is waived to the extent that the party who should have pleaded the affirmative defense may not introduce evidence in support thereof, unless the adverse party makes no objection in which case the issues are enlarged, or unless an amendment to set forth the affirmative defense is properly made.'
" ' "2A J. Moore, Federal Practice § 8.27[3] at 8-251 (2d Ed. 1948). See Funding Systems Leasing Corporation v. Pugh, 530 F.2d 91 (5th Cir. 1976)."
" ' Smith v. Combustion Resources Engineering, 431 So.2d 1249 (Ala. 1983). See, also, Columbia Engineering International, Ltd. v. Espey, 429 So.2d 955 (Ala. 1983).' "
Newman v. Howard, 239 So.3d 1147, 1149-51 (Ala. 2017) (quoting Bechtel v. Crown Central Petroleum Corp., 451 So.2d 793, 796 (Ala. 1984) ).
In the present case, the employer failed to plead as an affirmative defense that the employee's "loss of employment [was] for actual or threatened misconduct committed in connection with his ... work after previous warning." Instead, 10 days before the trial, the employer filed a motion in limine or, in the alternative, for a partial summary judgment, arguing that the employee was precluded from presenting evidence of his vocational impairment because he had lost his employment "for actual or threatened misconduct committed in connection with his ... work after previous warning." The employee objected to the employer's motion, arguing that the employer had waived that affirmative defense.
*673 The employer argues that it sufficiently raised the relevant affirmative defense set forth in § 25-5-57(a)(3) i.(iv) by, in its answer, admitting that it was subject to the Act and pleading the defense of the exclusivity provisions of the Act, which are found in § 25-5-52 and § 25-5-53, Ala. Code 1975. We recognize, however, that "the point of Rule 8(c)[, Ala. R. Civ. P.,] is to give a party notice of affirmative defenses expected to be raised during litigation." Patterson v. Liberty Nat'l Life Ins. Co., 903 So.2d 769, 780 (Ala. 2004). Accordingly, we conclude that the employer's references to the applicability of the entire Act and to the exclusivity provisions of the Act, which are separate and apart from the return-to-work statute, were insufficient to give notice of the affirmative defense provided in § 25-5-57(a)(3) i.(iv).
Based on the foregoing, we conclude that the employer waived the affirmative defense provided in § 25-5-57(a)(3) i.(iv). Therefore, the trial court erred in declining to consider evidence of the employee's vocational impairment based on that defense. Accordingly, we reverse the trial court's judgment to the extent that it declined to consider evidence of the employee's vocational impairment in determining the employee's permanent-partial-disability benefits, and we remand this cause for reconsideration of the employee's permanent-partial-disability benefits in light of this opinion.
Based on our resolution of this matter, we have no cause to discuss the employee's argument regarding the merits of the affirmative defense.
II. Average Weekly Wage
The employee also argues that the trial court used the wrong average weekly wage in determining his benefits; specifically, he argues that the trial court should have included in the average weekly wage the employer's cost of providing certain benefits to the employee. We note, however, that the employee has failed to cite any authority in support of that argument. "Rule 28(a)(10)[, Ala. R. App. P.,] requires that arguments in briefs contain discussions of facts and relevant legal authorities that support the party's position. If they do not, the arguments are waived." White Sands Grp., L.L.C. v. PRS II, LLC, 998 So.2d 1042, 1058 (Ala. 2008). Therefore, we decline to address the employee's argument on this point.
III. Contempt
The employee finally argues that the trial court erred in declining to hold the employer in contempt for its alleged failure to pay for the employee's pain-management treatment. However, the trial court did not make specific findings of fact in its order denying the employee's motion for contempt, and the employee did not file a postjudgment motion or otherwise raise the issue of the sufficiency of the evidence regarding that issue. "[I]n a nonjury case in which the trial court makes no specific findings of fact, a party must move for a new trial or otherwise properly raise before the trial court the question relating to the sufficiency or weight of the evidence in order to preserve that question for appellate review." New Props., L.L.C. v. Stewart, 905 So.2d 797, 801-02 (Ala. 2004). Therefore, we decline to address the merits of the employee's argument concerning the contempt issue.
Conclusion
Based on the foregoing, we reverse the trial court's judgment to the extent that it declined to consider evidence of the employee's vocational impairment in determining the employee's permanent-partial-disability benefits, and we remand the cause for reconsideration of the employee's permanent-partial-disability benefits in *674 light of this opinion. The judgment is affirmed in all other respects.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
Thompson, P.J., and Pittman, Thomas, and Donaldson, JJ., concur.