Rel: December 22, 2023

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2023-2024

———————————————

### SC-2023-0210

———————————————

**Ex parte Hankook Tire America Corporation and Hankook Tire & Technology Co., Ltd., f/k/a Hankook Tire Manufacturing Company**

**PETITION FOR WRIT OF MANDAMUS**

**(In re: Le'Asia Ann Crum, the dependent daughter and next kin of Robert Crum, Jr., deceased; and J.C., the minor child of Robert Crum, Jr., deceased, by and through his mother, legal representative, and next friend, Jacqueline Malone**

**v.**

**Hankook Tire America Corporation et al.)**

_____

**SC-2023-0312**
_____

**Ex parte Hankook Tire America Corporation and Hankook Tire & Technology Co., Ltd., f/k/a Hankook Tire Manufacturing Company**

**PETITION FOR WRIT OF MANDAMUS**

**(In re: Le'Asia Ann Crum, the dependent daughter and next kin of Robert Crum, Jr., deceased; and J.C., the minor child of Robert Crum, Jr., deceased, by and through his mother, legal representative, and next friend, Jacqueline Malone**

**v.**

**Hankook Tire America Corporation et al.)**

**(Dallas Circuit Court: CV-19-900292)**

MITCHELL, Justice.

Robert Crum, Jr., died when a concrete truck he was driving overturned in Dallas County. Claiming that the accident was caused by a defective tire on the truck, Crum's daughter, Le'Asia Ann Crum, and Crum's minor son, J.C., acting by and through his mother Jacqueline Malone ("the plaintiffs"), sued multiple parties, including the companies that allegedly designed, manufactured, and distributed the tire in

2

question, Hankook Tire America Corporation and Hankook Tire & Technology Co., Ltd. ("Hankook").[1]

When the plaintiffs deposed Hankook's designated corporate representative, Won Yong Choi, they say that he provided evasive answers to their questions or did not provide any answer at all. They further state that Hankook's attorney compounded the problem by repeatedly interrupting, objecting, and instructing Choi not to answer. After the deposition, the plaintiffs moved the Dallas Circuit Court to impose sanctions against Hankook based on the conduct of Choi and Hankook's attorney. The trial court granted that motion and entered an order (1) prohibiting Hankook from having any corporate representative give testimony at trial that expounded on or went beyond Choi's deposition testimony; (2) barring Hankook from disputing at trial that

---

[1]There is some confusion about whether the orders that are the subject of these mandamus proceedings applied to only Hankook Tire & Technology or to Hankook Tire America as well. The plaintiffs state that Hankook Tire & Technology "is the only entity at issue for this mandamus." Answer in case no. SC-2023-0210 at 2 n.8. But, out of an abundance of caution, both Hankook Tire & Technology and Hankook Tire America have petitioned for relief. For convenience, we follow the parties' leads and simply refer in this opinion to "Hankook," whether that encompasses one or both of the petitioners.

the failed tire was defective; and (3) striking 10 of Hankook's affirmative defenses concerning contributory negligence, assumption of risk, and misuse. In case no. SC-2023-0210, Hankook petitions this Court for a writ of mandamus directing the trial court to vacate that sanctions order. We grant that petition.

The trial court additionally directed the plaintiffs to submit evidence of the attorneys' fees and costs they had incurred in preparing for and taking Choi's deposition. After they did so, the trial court entered an order awarding the plaintiffs $66,550 in attorneys' fees. In case no. SC-2023-0312, Hankook petitions this Court for a writ of mandamus directing the trial court to vacate that fee order. We grant that petition as well.

Facts and Procedural History

On July 26, 2019, Crum was driving a concrete truck for his employer, Cosby-Carmichael, Inc., when the tire on the front passenger side of the truck failed, causing him to lose control of the truck and the truck to overturn. Crum died as a result of the injuries he sustained in the accident.

The tire that failed was a 10-year-old Hankook AH10 tire. The plaintiffs allege that the tire had plenty of tread life left when it detreaded without warning, causing Crum's accident. Believing that the tire was defective, the plaintiffs sued Hankook, asserting negligence, wantonness, breach-of-warranty, and product-liability claims.[2] Hankook denied that its tire was defective and asserted a number of affirmative defenses, including contributory negligence, assumption of risk, and misuse.

After Hankook unsuccessfully attempted to remove the action to federal court, the parties proceeded with discovery, and the plaintiffs served a deposition notice under Rule 30(b)(6), Ala. R. Civ. P., which authorizes the requesting party to name "as the deponent a public or private corporation … and [to] describe with reasonable particularity the matters on which examination is requested." A corporation receiving a Rule 30(b)(6) notice is obligated to "designate one or more officers, directors or managing agents, or other persons who consent to testify on

---

[2]The plaintiffs also sued Cosby-Carmichael and two companies that allegedly sold, installed, and performed maintenance on the tire in question, Jones Tire, LLC, and Jones Interstate Tire Company, Inc. Those defendants are not parties to these mandamus proceedings.

5

its behalf," and "[t]he persons so designated shall testify as to matters known or reasonably available to the organization." Id. In their deposition notice, the plaintiffs identified 35 matters on which examination was requested; those matters broadly fell within the following categories: (1) tire aging; (2) the design, testing, manufacturing, marketing, and performance of Hankook AH10 tires; (3) other instances when Hankook tires had similarly failed; (4) Hankook's record-retention policies; (5) Hankook's research about tire failures; and (6) Crum's accident.

Hankook designated Choi as its corporate representative for the Rule 30(b)(6) deposition. Choi began his employment with Hankook in 2004 after graduating with a degree in mechanical engineering. He initially worked in research and development in Korea, becoming an assistant manager after four years; then, in 2012, he moved to the United States, where he provided technical services to Hankook's North America customers. After five years in the United States, Choi returned to Korea, where he worked on Hankook's product-development team for North America, ultimately rising to his current position as head of Hankook's development team for trucks and buses. Because Choi was located in

6

Korea, the parties agreed that he would be deposed over two days via video link. They also agreed to use interpreters because Choi was more comfortable testifying in his native Korean.

The first day of Choi's deposition lasted 7 hours and 43 minutes; the second day lasted 7 hours and 28 minutes. The deposition was at times contentious. At several points over the course of the two-day deposition, plaintiffs' counsel threatened to involve the trial court, and, true to his word, the plaintiffs moved the trial court for sanctions three months later. The plaintiffs argued that Choi had been unable or unwilling to answer even simple questions during the deposition and that Hankook's counsel had "bombard[ed] the deposition with argumentative interruptions, speaking objections, and instructions not to answer." The plaintiffs specifically asked the trial court to sanction Hankook by (1) prohibiting Hankook from having any corporate representative give testimony at trial that expounded on or went beyond Choi's deposition testimony, such as by suggesting that the tire detreaded due to maintenance issues, improper inflation, or misuse; (2) establishing as a fact that the subject tire detreaded due to a manufacturing defect; (3) striking Hankook's contributory-negligence, assumption-of-risk, and

7

misuse affirmative defenses; and (4) awarding the plaintiffs reasonable attorneys' fees and expenses.

Hankook opposed the plaintiffs' motion on both procedural and substantive grounds. It first argued that the plaintiffs had failed to comply with Rule 37(a)(2), Ala. R. Civ. P., which provides that a motion for discovery sanctions "<u>shall</u> be accompanied by a statement of the attorney for the moving party stating that the attorney, before filing the motion, has endeavored to resolve the subject of the discovery motion through correspondence or discussions with opposing counsel" (emphasis added). Hankook stated that the plaintiffs had not submitted the mandatory statement and that they could not do so because, in the three months since the deposition, they had not made any attempt to discuss or resolve any outstanding grievances related to it. Hankook further argued that Choi had been prepared for the deposition and had answered the plaintiffs' questions to the best of his ability and that nothing in his or Hankook's counsel's conduct during the deposition was improper or warranted sanctions.

The trial court conducted a hearing on the motion for sanctions at which it reviewed excerpts from the videotaped deposition and heard

8

from counsel on both sides, including the attorneys who had participated in the deposition. The trial court then entered an order granting the plaintiffs' motion, observing that "one of four things occurred almost every time [Choi] was asked a substantive question. He either was not prepared to answer the question; answered the question in an evasive manner; was instructed not to answer by Hankook's counsel; or was unnecessarily interrupted by Hankook's counsel's speaking objections." The trial court thus concluded that Hankook had violated its duty under Rule 30(b)(6) to produce a knowledgeable corporate representative and ruled that the plaintiffs were entitled to the sanctions they had requested. In addition, the trial court gave the plaintiffs 15 days to submit evidence of the attorneys' fees and costs they had incurred in preparing for and taking Choi's deposition and in pursuing sanctions. After the plaintiffs submitted evidence of attorneys' fees totaling $66,550, Hankook countered by arguing that the plaintiffs were not entitled to any award because, Hankook said, the underlying sanctions were unwarranted.

To ensure it did not waive its right to seek appellate review of the sanctions order, Hankook petitioned this Court for a writ of mandamus

before the trial court finalized the amount of the monetary sanction. See Rule 21(a)(3), Ala. R. App. P. We docketed that petition as case no. SC-2023-0210. After the trial court entered an order awarding the plaintiffs $66,550 in attorneys' fees, Hankook filed another petition seeking mandamus review of that order as well. We docketed that petition as case no. SC-2023-0312 and consolidated it with the prior petition for review.

Standard of Review

Mandamus is an extraordinary remedy that will be granted only when the petitioner establishes (1) a clear legal right to the order sought; (2) an imperative duty upon the trial court to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court. Ex parte Gulf Health Hosps., Inc., 321 So. 3d 629, 632 (Ala. 2020). The petitioner bears the burden of establishing all four of these elements before a writ of mandamus will issue. Id. Additionally, we note that a trial court's order imposing discovery sanctions will be disturbed only if it is shown that the court went beyond its discretion in entering that order. Daily v. Esser, [Ms. SC-2022-0672, Sept. 29, 2023] ___ So. 3d ___, ___ (Ala. 2023).

Case No. SC-2023-0210

The parties' arguments to this Court focus on the first and third elements of the mandamus test -- whether Hankook has a clear legal right to the relief it seeks and whether it has an adequate remedy by way of appeal. We analyze those elements in reverse order -- because if Hankook has not established a cognizable basis for mandamus review, it is not necessary to determine whether it has a clear legal right to relief.

A. Adequate Remedy

In Ex parte State Farm Fire & Casualty Co., 320 So. 3d 550, 553 (Ala. 2020), this Court explained that a party seeking mandamus relief can meet its burden of showing that it has no other adequate remedy by citing "caselaw establishing that its petition falls within one of the recognized exceptions to the general rule prohibiting interlocutory appellate review, or otherwise explain[ing] why its case is extraordinary and merits a new exception to that general rule." (Footnote omitted.) Here, Hankook cites two cases as justifying its mandamus petitions: Ex parte Gadsden Country Club, 14 So. 3d 830, 833 (Ala. 2009) ("'A trial court's disallowance of a party's affirmative defense is reviewable by a petition for a writ of mandamus.'") (citation omitted), and Ex parte

11

Ocwen Federal Bank, FSB, 872 So. 2d 3d 810, 813-14 (Ala. 2003) (explaining that "review by appeal of a discovery order may be inadequate … when the trial court … imposes sanctions effectively precluding a decision on the merits … so that … the outcome has been all but determined, and the petitioner would be merely going through the motions of a trial to obtain an appeal").  Satisfying either Gadsden Country Club or Ocwen would entitle Hankook to mandamus review.

Hankook has demonstrated that it fits under Gadsden Country Club -- a case the plaintiffs do not address.  Gadsden Country Club provides that "'[a] trial court's disallowance of a party's affirmative defense is reviewable by a petition for a writ of mandamus.'"  14 So. 3d at 833. We have affirmed that principle as recently as last week.  See Ex parte BTC Wholesale Distribs., Inc., [Ms. SC-2022-0881, Dec. 15, 2023] ___ So. 3d ___, ___ (Ala. 2023).  The trial court's sanctions order struck Hankook's contributory-negligence, assumption-of-risk, and misuse affirmative defenses; therefore, under Gadsden Country Club and BTC

Wholesale Distributors, Hankook is permitted to seek appellate review of that order without waiting until a final judgment is entered.[3]

B. Clear Legal Right

We turn to whether Hankook has a clear legal right to the relief it seeks. At the outset, we note that the plaintiffs have acknowledged that the trial court did not enter the sanctions in this case under Rule 37(a)(2). That rule provides that when "a deponent fails to answer a question" during a deposition,[4] "the discovering party may move for an order compelling an answer." Id.[5] If the trial court grants the motion and enters an order compelling a response, and the deponent refuses to comply with that order, the court may then enter sanctions against that party under Rule 37(b)(2). Here, it is undisputed that no motion to compel was ever made or granted, nor was there ever a refusal by Choi

---

[3]Because Gadsden Country Club provides a sufficient basis for Hankook to obtain mandamus review, it is unnecessary for us to consider an alternate basis under Ocwen.

[4]Under Rule 37(a)(3), "an evasive or incomplete answer is to be treated as a failure to answer."

[5]But the discovering party should refrain from filing such a motion until after it has "endeavored to resolve" the dispute with opposing counsel. Rule 37(a)(2).

or Hankook to comply with a discovery order. Thus, the sanctions entered by the trial court cannot be justified by Rule 37(a)(2).

The plaintiffs correctly note, however, that "no court order is required to bring Rule 37(d) into play." Iverson v. Xpert Tune, Inc., 553 So. 2d 82, 88 (Ala. 1989). Rule 37(d) provides that if a corporate representative designated under Rule 30(b)(6) fails "to appear" for a properly noticed deposition, the trial court may sanction the party in the same manner as if a discovery order entered in response to a Rule 37(a)(2) motion was violated. See Rule 37(d) (explaining that, when there has been a failure to appear, "the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under paragraphs (A), (B), and (C) of subdivision (b)(2) of this rule"). Hankook does not contest a trial court's authority to sanction a party under Rule 37(d) when there has been a failure to appear -- it simply argues that there was no failure to appear here, where it is undisputed that Choi showed up at the appointed time and was questioned by the plaintiffs for over 15 hours. The plaintiffs nonetheless maintain that Choi's behavior during his deposition was tantamount to a failure to appear such that the trial court

14

was permitted to impose sanctions under Rule 37(d). This issue therefore hinges on what constitutes a failure "to appear" as that term is used in Rule 37.

To begin, we note that the heading of Rule 37(d) indicates that it applies to the "Failure of Party to <u>Attend</u> at Own Deposition" (emphasis added), while the text of the rule addresses a party that "fails … to <u>appear</u> before the officer who is to take the deposition" (emphasis added). Citing the definitions for "appear" and "attend" in <u>Merriam-Webster's Collegiate Dictionary</u> 60, 79 (11th ed. 2020), Hankook argues that those words "unambiguously refer only to situations in which a party is not <u>actually</u> 'present at' the deposition or does not 'come <u>formally</u>' to it." Hankook's reply brief at 4-5.

The plaintiffs do not address with specificity the meaning of the terms used in the Rule but, instead, argue that a deponent's inability or unwillingness to answer questions is equivalent to a failure to attend or to appear. In doing so, they cite several federal cases in which courts have interpreted the similarly worded Fed. R. Civ. P. 37(d). <u>See, e.g.</u>, <u>Kartagener v. Carnival Corp.</u>, 380 F. Supp. 3d 1290, 1295 (S.D. Fla. 2019) ("Defendant's failure to present a witness prepared to testify about the

topics on which she was designated was, under the circumstances, tantamount to a failure to appear at all."); <u>Black Horse Lane Assocs., L.P. v. Dow Chem. Corp.</u>, 228 F.3d 275, 304 (3d Cir. 2000) ("[I]f a Rule 30(b)(6) witness is unable to give useful information he is no more present for the deposition than would be a deponent who physically appears for the deposition but sleeps through it."); <u>Resolution Tr. Corp. v. Southern Union Co.</u>, 985 F.2d 196, 197 (5th Cir. 1993) (holding that designation of two corporate representatives without relevant knowledge "was tantamount to a complete failure of the corporation to appear").

In response, Hankook notes that none of the cases cited by the plaintiffs constitute binding authority, and it urges us to reject their "atextual" interpretation of Rule 37. Hankook's reply brief at 5. <u>See also</u> <u>Spinks v. Automation Pers. Servs., Inc.</u>, 49 So. 3d 186, 191 n.4 (Ala. 2010) (recognizing that authority interpreting a Federal Rule of Civil Procedure that is similarly worded to an Alabama Rule of Civil Procedure may be "persuasive," but it is "not binding on this Court"). Additionally, Hankook cites an <u>Alabama Law Review</u> article in which the authors criticized decisions in which sanctions were entered after a corporate representative's appearance was deemed to be insufficient, stating that

such decisions "are neither warranted under the Rule nor sustainable in logic and common sense." Kent Sinclair & Roger P. Fendrich, <u>Discovering Corporate Knowledge and Contentions: Rethinking Rule 30(b)(6) and Alternative Mechanisms</u>, 50 Ala. L. Rev. 651, 672-73 (1999).

Having considered all of these arguments, we conclude that Hankook's position is in step with both the text of Rule 37(d) and the structure of Rule 37 as a whole. <u>See</u> Antonin Scalia & Bryan A. Garner, <u>Reading Law: The Interpretation of Legal Texts</u> § 24, at 167 (Thomson/West 2012) (explaining that the whole-text canon requires "the judicial interpreter to consider the entire text, in view of its structure and of the physical and logical relation of its many parts"). Rule 37(d) applies when a person "fails … to appear before the officer who is to take the deposition." That subsection deals with a person who fails to submit himself to the officer taking the deposition, but it does not address what happens once a person has submitted himself to the officer and declines to answer questions. If, over the course of a deposition, a deponent is consistently unable or unwilling to answer questions that are asked, Rule 37(a) -- not Rule 37(d) -- provides the mechanism by which an aggrieved party can obtain relief.

Under Rule 37(a), if the aggrieved party is unable to resolve the dispute with counsel from the other side after the deposition, that party can move the trial court to compel responses. If the motion is granted and the deponent refuses to comply with the resulting order, the trial court is then authorized to impose sanctions under Rule 37(b)(2). But the aggrieved party cannot short-circuit the Rule 37(a) process by claiming that a deponent's incomplete testimony is effectively a failure to appear, especially where, as here, it is undisputed that Choi did testify regarding a variety of topics over the course of 15 hours of questioning. In sum, while the plaintiffs may have a legitimate grievance with some of Choi's answers or nonanswers, his performance was a far cry from the hypothetical sleeping deponent discussed in <u>Black Horse Lane Associates</u>, 228 F.3d at 305, and any redress must come through Rule 37(a), not Rule 37(d).

This interpretation of Rule 37 is reflected in the Committee Comments to the Rule. Rule 37(d) addresses not only the failure to appear for a deposition, but also the failure "to serve answers or objections to interrogatories" and the failure "to serve a written response to a request for production or inspection." The Committee Comments on

18

the 1973 Adoption of the Rule explain that "Rule 37(d) provides remedies for <u>complete</u> failures to respond or object to discovery" (emphasis added), thus suggesting that it should not be invoked when there has been only a <u>partial</u> failure to respond.  <u>See also</u> Sinclair & Fendrich, <u>supra</u>, at 739 ("[I]n the normal case, if a witness of any sort is produced in response to a notice under the Rule, and the witness answers at least <u>some</u> questions, no dispositive sanctions have ever been awarded by a federal court.").

Finally, we note that Rule 37(d) provides no basis for sanctioning Hankook based on the conduct of its counsel during Choi's deposition.  If Hankook's counsel instructed Choi not to answer questions or otherwise interfered with his ability to provide answers during the deposition, the plaintiffs could file a motion to compel under Rule 37(a).  If the trial court granted that motion, Rule 37(a) provides for the recovery of some expenses, <u>see</u> Rule 37(a)(4), but it does not authorize the sanctions listed in Rule 37(b), which the trial court imposed in this case.  Rule 37(b) sanctions become available only after there has been a failure to comply with a motion to compel (Rule 37(a)) or a failure to appear or a complete failure to respond (Rule 37(d)). Because there were no such failures in

this case, the trial court exceeded its discretion by imposing sanctions on Hankook under Rule 37(d).

### Case No. SC-2023-0312

Because the order imposing Rule 37 sanctions on Hankook is due to be vacated, the trial court's follow-up order setting the amount of the monetary sanction imposed in that initial order must also be vacated.

The plaintiffs argue unpersuasively that all awards of attorneys' fees are interlocutory orders not subject to mandamus review. They cite Ex parte Gallant, 261 So. 3d 350 (Ala. Civ. App. 2017), to support their argument, but that case is distinguishable. There, the Court of Civil Appeals held that the petitioner was not entitled to mandamus relief because his substantive arguments had not been timely asserted or because he had an adequate remedy on appeal. 261 So. 3d at 354-55. Here, by contrast, we have already explained that a party may properly seek mandamus relief of a trial court's order striking its affirmative defenses. See Gadsden Country Club, 14 So. 3d at 833; BTC Wholesale Distributors, ___ So. 3d at ___.

And, as we have explained above, the trial court exceeded its discretion by sanctioning Hankook under Rule 37(d) even though Choi

did not fail to appear for his deposition. Because the order imposing Rule 37 sanctions on Hankook is due to be vacated, the trial court's award of attorneys' fees -- based on the same conduct as the other sanctions -- is also due to be vacated. If Hankook was challenging only an award of attorneys' fees, our conclusion about whether that challenge was appropriate for mandamus review might be different. But it would be contrary to principles of judicial economy for us to ignore that award now when we have already held that the sanctions order was unwarranted.

## Conclusion

Because Choi did not fail to appear for the Rule 30(b)(6) deposition, the sanctions entered by the trial court were not authorized by Rule 37(d). Hankook's petitions are therefore granted, and the trial court is directed to vacate both its initial order sanctioning Hankook and its later order imposing a monetary sanction.

SC-2023-0210 -- PETITION GRANTED; WRIT ISSUED.

SC-2023-0312 -- PETITION GRANTED; WRIT ISSUED.

Parker, C.J., and Shaw, Wise, Bryan, Mendheim, and Stewart, JJ., concur.

Cook, J., concurs specially, with opinion.

21

COOK, Justice (concurring specially).

I concur fully with the main opinion's thorough analysis and resolution of the issues presented by these consolidated petitions for writs of mandamus. I write specially, however, for two reasons.

First, I note that the plaintiffs in this case could have used the procedures under Rule 37, Ala. R. Civ. P., to request an order from the trial court to compel cooperation from Hankook's designated corporate representative, Won Yong Choi. Doing so would have provided several options to them. For example, after Choi refused to answer a question, the plaintiffs could have "complete[d] or adjourn[ed]" the deposition and then moved for an order compelling Choi to answer under Rule 37(a)(2). If Choi continued to refuse to respond even after the plaintiffs moved for and were granted an order compelling his response, the trial court would have had a number of powerful sanctions at its disposal under Rule 37(b)(2). Those sanctions include:

> "(A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;
>
> "(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in

evidence;

"(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;

"(D) In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders except an order to submit to a physical or mental examination;

"(E) Where a party has failed to comply with an order under Rule 35(a)[, Ala. R. Civ. P.,] requiring that party to produce another for examination, such orders as are listed in paragraphs (A), (B), and (C) of this subdivision, unless the party failing to comply shows that that party is unable to produce such person for examination."

Rule 37(b)(2).

In addition to any of the foregoing options under Rule 37(b)(2), the trial court would have also had the authority to order Hankook or Choi to pay the reasonable expenses, including attorneys' fees, incurred by the plaintiffs in obtaining an order compelling Choi's response pursuant to Rule 37(a)(4). That rule states:

"If the motion is granted, the court shall, after opportunity for hearing, require the party or deponent whose conduct necessitated the motion or the party advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney fees, unless the court finds that the opposition to the motion

23

was substantially justified or that other circumstances make an award of expenses unjust."

Rule 37(a)(4). I offer no opinion as to which of the above-suggested options constitutes the most appropriate course of action; rather, I note these options for the benefit of the bench and the Bar.

Despite the options that Rule 37 currently provides to litigants and their attorneys when confronted with misconduct during discovery, I note the possibility that the above-listed options may not be sufficient in all circumstances. I thus write specially to also suggest that we consider modifying our Rules of Civil Procedure to address future occurrences of party or attorney misconduct during discovery in a more comprehensive way.

In the Federal Rules of Civil Procedure, Rule 30(d), Fed. R. Civ. P., provides parameters to help ensure that depositions are conducted in both a professional and timely manner. For example, Rule 30(d)(2) gives trial judges authority to issue sanctions against deponents and their attorneys for a broad range of misconduct that occurs during a deposition:

> "The court may impose an appropriate sanction -- including the reasonable expenses and attorney's fees incurred by any party -- on <u>a person who impedes, delays, or frustrates the fair examination of the deponent</u>."

24

(Emphasis added.)

Given that the trial court may sanction a party for impeding a deposition, Rule 30(d)(1), Fed. R. Civ. P., requires that a deposition should, normally, be completed in a timely manner and allows additional time for doing so with permission from the trial court. Specifically, that rule provides:

> "(1) Duration. Unless otherwise stipulated or ordered by the court, a deposition is limited to one day of 7 hours. The court must allow additional time consistent with Rule 26(b)(1)[, Fed. R. Civ. P.,] and (2) if needed to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes or delays the examination."

Rule 30(d)(1). A substantial portion of the Advisory Committee Notes for Rule 30, Fed. R. Civ. P., explain how to apply these provisions in practice.[6]

In addition to the parameters provided in Rule 30(d), Fed. R. Civ. P., I note that Rule 30(c)(2), Fed. R. Civ. P., provides the following

---

[6]Other aspects of Rule 30(d), Fed. R. Civ. P., are already contemplated in the current version of Rule 30, Ala. R. Civ. P. Compare Rule 30(d)(3), Fed. R. Civ. P. (providing for a motion to limit or terminate a deposition on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party), with Rule 30(d), Ala. R. Civ. P. (providing for the same remedy).

parameters for speaking objections:

> "An objection at the time of the examination -- whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking the deposition, or to any other aspect of the deposition -- must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection. <u>An objection must be stated concisely in a nonargumentative and nonsuggestive manner</u>. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)."

(Emphasis added.)

When I was practicing in federal court, I found that both of these rules not only helped to ensure that most depositions were completed in a timely manner, but also helped maintain a level of professionalism and decorum throughout those proceedings. I offer no opinion as to whether Rules 30(d) or 30(c)(2), Fed. R. Civ. P., or some variation of those rules, should be adopted in Alabama. Rather, I make these observations only to suggest that the Standing Committee on the Alabama Rules of Civil Procedure consider a change in our rules to address future occurrences of misconduct in a similar, more comprehensive way.